**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

IN RE:

Mohammed M. Haque,

                  Debtor.

Chapter 13
Case No.: 1-18-44081-nhl

-------------------------------------------------------------------x

## MEMORANDUM OF LAW SUPPORTING WELLS FARGO'S MOTION FOR RECONSIDERATION AND/OR RELIEF FROM THE JUNE 17, 2019 ORDER AND FOR A STAY OF THAT ORDER PENDING A DECISION ON THIS MOTION

HSBC Bank USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-AR10 ("Wells Fargo"), pursuant to Fed. Rs. Civ. P. 59(e) and 60(b), made applicable herein by Fed. Rs. Bankr. P. 9023 and 9024, respectively, respectfully moves the Court for reconsideration of the Order for Document Production, entered on June 17, 2019 (the "June 17 Order" or "Order"). [Doc. No. 65.]

### I.    PRELIMINARY STATEMENT

The June 17 Order—which requires Wells Fargo to produce proprietary information concerning its servicing business that is wholly unrelated to the Debtor, confidential information relating to other loans serviced by Wells Fargo, and potentially sworn testimony from the most senior legal executives (*i.e.*, the general counsel) for both the servicer and investor who possess no personal knowledge concerning the Debtor or the Debtor's multiple loan modification requests—ignores controlling law, is extremely onerous and burdensome and fails to set forth any basis for requiring this information to be produced.  Specifically, the Court's June 17 Order violates the "apex" doctrine, which mandates that the Court first determine whether senior executives possess unique personal knowledge of facts relevant to the action before requiring testimony from them. Further, the Order, which was entered without a Rule 2004 motion, requires review and production

of documents dating back to June 2006 – a period of approximately thirteen (13) years and long

before the Debtor ever submitted a modification request – is overbroad and tremendously

burdensome.  For the reasons set forth below, Wells Fargo respectfully requests that the Court

reconsider the June 17 Order and set it aside, or, alternatively, modify the Order significantly to:

(i) limit the scope (as set forth below); (ii) eliminate the requirement to provide sworn testimony

from senior executives; and (iii) extend the July 1, 2019 document production date to forty-five

days from the date the Court rules on this motion.  Wells Fargo also requests, in the interim, that

the Court stay the June 17 Order, pending a decision on this motion.[1]

## II.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY

To avert the foreclosure sale of his property scheduled for July 20, 2018, Mr. Haque (the

"Debtor") commenced this chapter 13 action on July 16, 2018.  [Doc. No. 1]  Wells Fargo

immediately objected to the Debtor's request to participate in the Loss Mitigation Program on

August 1, 2018, on the basis Mr. Haque's loan was previously reviewed for loan modifications

numerous times between 2008 and 2016, including in connection with the loss mitigation program

in the state foreclosure action, and had previously been modified.[2]  [Doc. No. 14.]  Wells Fargo

---

[1] This motion, which is being made within ten days of entry of the Order on June 17, 2019 [Doc. No. 65], is timely.  This motion for reconsideration is also timely under F. R. Bankr. P. 9024. *See In re Barker*, 306 B.R. 238 (Bankr. C.D. Ill. 2004) (holding Fed. R. Civ. P. 59(e), made applicable to bankruptcy cases by F. R. Bankr. P. 9023, was not available where defendant's motion was filed more than ten days after entry of judgment but defendant's remaining recourse was under Fed. R. Civ. P. 60(b)).
[2] During the foreclosure action, titled "HSBC Bank USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-AR10 v. Mohammed M. Haque, *et al.*," filed in Queens County Supreme Court under index number 11851/2012, Mr. Haque engaged in loss mitigation with Wells Fargo and participated in several mandatory foreclosure settlement conferences between April 26, 2013 and September 10, 2013, after which the settlement part released the case to proceed with litigation because the parties did not reach a settlement. The foreclosure settlement part held two additional conferences on February 11, 2015 and May 18, 2015, after which the part again released the case because the parties did not reach a resolution. This Court can take judicial notice of the trial court proceedings in this action. *See, e.g., City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F. Supp. 1273, 1279 (E.D.N.Y. 1995) (noting it is appropriate for the district court to take "judicial notice of pending state court action for the limited purpose of recognizing the subject matter of the litigation").

also noted in is objection that the Debtor had been living in the premises without paying his mortgage for approximately eight years. [*Id.*]

Nevertheless, the Court ordered the parties to participate in loss mitigation on October 10, 2018. [Doc. No. 27.] Mr. Haque submitted a loss mitigation application to Wells Fargo on October 29, 2018. [Doc. No. 30.] Wells Fargo denied the application on November 21, 2018, because Mr. Haque was not eligible for the applicable modification program (a piggy-back with a temporary rate reduction, which would create a balloon payment upon maturity of the loan and modify the interest rate) on the basis of a negative net present value ("NPV"). [Doc. No. 32.] Wells Fargo provided a detailed letter on December 17, 2018, which identified the primary reasons for the November, 2018 denial as (1) Mr. Haque's high likelihood of re-default and (2) the fact that there is no payment relief with a modification. [Doc. No. 38.] Wells Fargo also noted that the applicable servicing agreement, dated June 29, 2006 ("Servicing Agreement"), restricted any capitalization or increase to the principal balance of the loan and informed the Court that Wells Fargo's request for a waiver of these restrictions to accommodate the Debtor was denied. [*Id.*] Because another modification was not an available option, Wells Fargo asked the Court to terminate loss mitigation on March 5, 2019. [Doc. No. 54.] In a March 22, 2019 order, this Court extended the loss mitigation period until May 21, 2019, and also requested the parties provide status reports by May 14, 2019. [Doc. No. 57.]

In the Debtor's May 5, 2019, loss mitigation status letter [Doc. No. 59], Mr. Haque acknowledged the $201,465.67 loan arrears total and that Wells Fargo had offered to help address the outstanding arrears balance by advancing twelve months of arrears to be paid upon maturity or sale. [*Id.*] Mr. Haque countered by accepting Wells Fargo's offer to defer twelve months of arrears (approximately $31,000) and agreeing to contribute his trustee payments, plus an additional

$20,000 personal contribution, which would reduce the outstanding arrears balance to $118,241.95. [*Id.*] In addition, with respect to the $118,241.95 remaining arrears balance, Mr. Haque contended that the Servicing Agreement's restrictions prohibiting modification are "inconclusive and contradictory" and requested that Wells Fargo agree to forbear four additional years of arrears. [*Id.*]

At the end of his letter, Mr. Haque also suggested that to the extent Wells Fargo continued to maintain that the applicable servicer guidelines prohibit capitalization of arrears, the Court should require Wells Fargo to provide "(1) complete copies of investor and servicer guidelines, (ii) waiver letters from both investor and servicer, and (iii) a list of any exceptions made to investor and servicer modification restrictions since the guidelines came into effect, with explanations as to why the exceptions cannot be applied to the Debtor, or, in the alternative, (iv) a sworn statement by general counsel for [sic] both the servicer and investor that no exceptions have been made since the guidelines came into effect." [*Id.*] Critically, Mr. Haque has never filed a motion seeking this information and failed to cite any legal support for these overbroad and burdensome requests in the May 5 status report.

Wells Fargo responded to Mr. Haque's letter on May 14, 2019. [Doc. No. 60.] Wells Fargo reiterated its offer, as servicer, to provide an interest free loan to Mr. Haque for twelve months of arrears to try to help get the modification approved, but stated that it otherwise is required to abide by the Servicing Agreement. [Doc. Nos. 38, 60.] In response, on May 22, 2019, Mr. Haque amended his offer by increasing his personal contribution from $20,000 to $25,000, agreeing to apply an additional $4,000 in plan payments held by the trustee, and requesting that Wells Fargo agree to defer an additional thirty-seven months of payments (as opposed to a forty-five month deferment). [Doc. No. 61.]

Shortly thereafter, the Court *sua sponte* issued the June 17 Order which copied the language from the Debtor's May 5 status letter and required Wells Fargo to produce "[c]omplete copies of the investor and servicer guidelines, waiver letters from both investor and servicer, and a list of exceptions made to investor and servicer modification restrictions since the guidelines came into effect, with explanations as to why the exceptions cannot be applied to the Debtor, or, in the alternative a sworn statement by general counsel for both the servicer and investor that no exceptions have been made since the guidelines came into effect" based "upon the request set forth in Debtor's Loss Mitigation status letter filed with this Court on May 5, 2019 . . ." [Doc. No. 65.]

## III.    LEGAL STANDARD

Under Fed. R. Bankr. P. 9023, motions for reconsideration in bankruptcy court are governed by Fed. R. Civ. P. 59 which provides, in relevant part, that a motion for an amendment of a judgment can be made where the district court committed clear error or its initial decision was manifestly unjust. *In re Swift,* Case No. 94-10285-CEC, 2014 Bankr. LEXIS 88, 2014 WL 103229, at *10 (Bankr. E.D.N.Y. Jan. 9, 2014) ("The purpose of rule 59(e) is to mak[e] clear that the . . . Court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment") (internal citations and quotations omitted); *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996) ("A Court may grant a Rule 59(e) motion to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact").

Similarly, Fed. R. Civ. P. 60(b)(1), made applicable under Fed. R. Bankr. P. 9024, provides, in relevant part, that a motion for relief from a judgment or order can be made for "mistake, inadvertence, surprise, or excusable neglect." Rule 60(b)(1) extends to include legal errors by the trial court. *See, e.g., In re 310 Assocs., L.P.*, 346 F.3d 31, 25 (2d Cir. 2003) ("In two

early cases, [the Second Circuit] established a principal that Rule 60(b)(1) was available for a district court to correct legal errors by the court . . . [and was] implicitly extended . . . to the correction of mistakes of fact"); *Lugo v. Artus*, No. 05-CV-1998, 2008 U.S. Dist. LEXIS 10159, 2008 WL 312298, at *2 (S.D.N.Y. Jan. 31, 2008) ("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party when the judge has made a substantive mistake of law or fact in the final judgment or order.  Thus, Rule 60(b)(1) motions can be used by a trial court to correct judicial errors") (footnote and internal quotation marks omitted).  Federal Rule 60(b)(6) also provides that a motion for relief can be made for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6) is properly invoked where "extraordinary circumstances justify[] relief or when the judgment may work an extreme and undue hardship." *In re Taub*, 421 B.R. 93, 102 (Bankr. E.D.N.Y. 2009); *Tolkin v. Pergament*, No. 11-CV-3467 (SJF), 2012 U.S. Dist. LEXIS 47830, 2012 WL 1132475, at *17 (E.D.N.Y. Mar. 31, 2012).

## IV.  ARGUMENT

Wells Fargo respectfully submits that relief is warranted because the June 17 Order is manifestly unjust and was entered in error.

### A.  The June 17 Order Violates the Apex Doctrine.

Pursuant to the "apex" doctrine, courts in this Circuit have required the proponent of testimony from senior corporate executives first to establish that the potential witness possesses unique personal knowledge of the facts relevant to the action. *See, e.g., Consol. Rail Corp. v. Primary Indus. Corp.*, No. 92 CIV. 4927 (PNL), 1993 U.S. Dist. LEXIS 12600, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (under the apex doctrine, "it is appropriate . . . to defer any live depositions of the three named executives until it has been demonstrated they have some unique knowledge pertinent to the issues in these cases" and defendant could establish that foundation

with written questions to those executives and through deposition testimony of other witnesses). Recognizing that apex witnesses present special potential for abuse, harassment and attendant costs, courts closely scrutinize the likelihood that the executives "possess[] relevant knowledge, whether another source could provide identical information, the possibility of harassment, and the potential disruption of business." *See, e.g., Hallmark Licensing LLC v. Dickens, Inc.*, No. 17-CV-2149 (SJF) (AYS), 2018 U.S. Dist. LEXIS 210662, 2018 WL 6573435, at *12-*13 (E.D.N.Y. Dec. 13, 2018).

The Court's June 17 Order improperly compels testimony from senior executives at Wells Fargo and HSBC in the form of "a sworn statement by general counsel for both the servicer and investor ...." [Doc. No. 59.] Douglas R. Edwards, executive vice president and interim general counsel of the servicer, Wells Fargo,[3] is unquestionably a high-ranking, senior Wells Fargo executive. Likewise, Mark Steffensen, as executive vice present and general counsel of the trustee, HSBC Bank USA, N.A.,[4] is a high-ranking corporate executive. Therefore, sworn statements from these executive officers that no exceptions have been made to the servicing restrictions violates the apex doctrine. (*Id.*) The Debtor has failed to establish that these individuals possess unique personal knowledge relevant to the facts of the Debtor's case or concerning the servicing restrictions at issue more generally. In fact, the Debtor has not even attempted to make the requisite showing. Instead, it is clear that testimony from these senior executives is being sought solely for purposes of harassment and to punish Wells Fargo and HSBC, as trustee, for not offering another modification.

---

[3] Mr. Edward's biography is publicly available on Wells Fargo's "Executive Officers" webpage, at https://www.wellsfargo.com/about/corporate/governance/edwards/ (URL) (last visited June 27, 2019).

[4] Mr. Steffensen's role as part of HSBC Bank USA, N.A.'s management team is publicly available on HSBC's website, at https://www.about.us.hsbc.com/hsbc-in-the-usa/management-team (URL) (last visited June 27, 2019).

Reconsideration is therefore warranted because the June 17 Order ignores controlling law on this substantive issue.

B.    The June 17 Order is Procedurally Improper.

Under Fed. R. Bankr. P. 2004, a motion by a "party in interest" is a pre-requisite to "the examination of any entity." Fed. R. Bankr. P. 2004(a).   The scope of discovery is limited to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).  A party seeking discovery bears the burden of establishing good cause, and the Court applies a totality of the circumstances test to determine whether good cause exists. *See, e.g., In re Metiom, Inc.*, 318 B.R. 263, 268 (Bankr. S.D.N.Y. 2004); *In Re Drexel Burnham Lambert Group*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) (Rule 2004 requires a Court to "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination.  That documents [are relevant] . . . does not alone demonstrate that there is good cause for requiring their production").[5]

Good cause is established if the movant shows the discovery is necessary to protect his or her *legitimate* interests. *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992).  However, "Rule 2004 examinations may not be used to annoy, embarrass or oppress the party being examined." *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (citation omitted); *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wisc. 1984) (holding that Rule 2004 cannot be used for "purposes of abuse or

---

[5] Pursuant to this Court's local bankruptcy rule 2004-1, titled "Assertion of Claim of Privilege, Uniform Definitions in Discovery Requests, and Counsel Fees on Taking Depositions More than 100 Miles from the Courthouse, in Rule 2004 Examinations," available at https://www.nyeb.uscourts.gov/usbc-edny-local-bankruptcy-rules#2004-1 (URL) (last visited June 27, 2019), District Rules 26.2 (Assertion of Claim of Privilege), 26.3 (Uniform Definitions in Discovery Requests) and 30.1 (Counsel Fees on Taking Depositions More than 100 Miles from Courthouse) are applicable to requests for production of documents under F. R. Bankr. 2004.

harassment"). Further, the court also must weigh the relevance of the discovery against the burden it will impose on the producing party. *In re Coffee Cupboard, Inc.*, 128 B.R. at 514.

It is undisputable that Mr. Haque did not make a motion pursuant to Rule 2004, as required, or even attempt to establish that good cause exists for requiring Wells Fargo to produce the information the Court has ordered in the June 17 Order.[6] As a result, Wells Fargo has been deprived of its fundamental right to object or otherwise request that the information be limited in scope, including through a protective order. Had a proper motion been filed, Wells Fargo would have had an opportunity to establish for the Court that the information sought by the Debtor is irrelevant to this proceeding and/or violates controlling law.

It cannot seriously be disputed that the information at issue in the June 17 Order does not pertain to Mr. Haque's financial condition. *See, e.g., In re Lufkin*, 255 B.R. 204, 209 (Bankr. E.D. Tenn. 2000) (noting "the scope of Rule 2004 is broad, [but] the rule cannot be used to . . . inquire into irrelevant matters, and examinations should not be overly disruptive or costly"). Indeed, the investor and servicer guidelines, waiver letters, and any exceptions made to the modification restrictions all pertain to Wells Fargo's business of servicing a pool of loans. Those documents reflect Wells Fargo's servicing policies and procedures, including the circumstances under which Wells Fargo deems it proper to request a waiver, as well as the circumstances under which it is determined by the Trustee that a waiver or exception to the applicable guidelines is appropriate. Moreover, the Servicing Agreement is dated June 29, 2006, so the June 17 Order covers information from an *almost thirteen year period* relating to a pool of hundreds of loans. Documents detailing the waiver and exception request process, as well as any resulting

---

[6] The only other potential mechanism for Mr. Haque to attempt to obtain these documents would be through Rules 7026-7037 of the Federal Rules of Bankruptcy Procedure, but those rules are unavailable to him because there is no pending adversary proceeding or contested matter.

modifications over the last thirteen years, are confidential and therefore are protected from disclosure. *See, e.g., In re Michalski*, 449 B.R. 273, 282-83 (Bankr. N.D. Ohio 2011) (quashing the trustee's requests for complete policies and procedures of creditor applicable to debtor's account because the requests were broad and sought policies and procedures used by the creditor to conduct its business).[7]

Moreover, as part of Wells Fargo's good faith participation in loss mitigation, it has provided the relevant sections of the Servicing Agreement to Mr. Haque to help facilitate the parties' good faith discussions. Those sections clearly outline Wells Fargo's responsibilities as servicer, including the restrictions on modifications and the availability of a forbearance plan here. Specifically, Section 3.1.2, titled "Modifications of Mortgage," states Wells Fargo, as servicer, "may" modify a loan in default *with the prior written consent of the Master Servicer* "provided, however, that (i) such modification may not reduce the amount of principal owed under the related Mortgage Note or permanently reduce the Mortgage Interest Rate for such Loan and (ii) the Servicer and the Master Servicer have determined that such modification is likely to increase the proceeds of such Mortgage Loan over the amount expected to be collected pursuant to foreclosure." [Doc. No. 51 at 4.]   The purpose of Wells Fargo's NPV analysis is to determine whether the benefits of modification outweigh the benefits of a foreclosure, and Mr. Haque's negative NPV result means that another modification is *not* "likely to increase the proceeds of such Mortgage Loan over the amount expected to be collected pursuant to foreclosure."[8]

---

[7] In addition, Wells Fargo's communications with borrowers concerning potential modifications are akin to settlement negotiations which should be afforded additional protection. *See, generally, In re Teligent, Inc.*, 640 F.3d 53 (2d Cir. 2011). Such protection extends to the financial information of any borrower who modified a loan or negotiated a forbearance plan.

[8] Wells Fargo's good faith determination is entitled to deference under the business judgment rule.

Wells Fargo also produced Section 12.3.6, titled "Forbearance Plan," which permits a: **(1)** forbearance plan for a "definite" period of time requiring a borrower to make payments "in excess of the monthly mortgage payments" (12.3.6(a)); **(2)** modification of the payment terms for a loan in default *with the Master Servicer's prior written consent* where there is no reduction in the unpaid principal balance or permanent reduction in the mortgage interest rate "and the modification is likely to increase the proceeds of such Mortgage Loan over the amount expected to be collected pursuant to a foreclosure or other similar procedure" (12.3.6(b)); and **(3)** forbearance plan where the total delinquency is paid within a short period of time, not exceeding twenty-one months from the date of default, and does not result in a "significant modification" of the loan. (12.3.6(b).) [Doc. No. 51 at 5.] Section 12.3.7, titled "Accommodation Limitations," explicitly states "[n]o modification, recast, extension, or capitalization of delinquent payments of a Mortgage Loan other than as provided in Section 12.3.6 hereof shall be permitted with respect to a Mortgage Loan." [Doc. No. 51 at 5.] Mr. Haque's own modification proposal [Doc. No. 61], which contemplates deferring over four years of arrears, does not even fall within any of the limited modification exceptions available for his loan.[9]

Wells Fargo would have raised these relevancy and confidentiality issues and objected to the request if Mr. Haque had filed a motion. But, he did not do so. Therefore, Wells Fargo respectfully submits that it is appropriate to reconsider and vacate the June 17 Order and provide

---

[9] To the extent Mr. Haque contends Wells Fargo waived the servicing restrictions by offering to defer a year of his payments until his loan matures or is paid off [Doc. Nos. 38, 60], this is incorrect. Wells Fargo's offer involves a payment on Mr. Haque's behalf by Wells Fargo itself on an interest free basis and does not substantially modify the terms of Mr. Haque's loan. Wells Fargo formally rejected Mr. Haque's May 22, 2019, proposal on June 13, 2019 [Doc. Nos. 67, 69], explaining it "is willing to advance 12 months of PITI payments on the Debtor's behalf to help get the modification approved. Wells is not willing to front any additional money aside from the 12 months."

Wells Fargo an opportunity to address each of these issues comprehensively so that it may protect

its rights from being subject to the overbroad and burdensome requirements of the Order.

C.      A Stay is Proper Pending Resolution of this Motion.

Wells Fargo respectfully requests the Court stay the June 17 Order pending resolution of

this motion.  Should the Court deny the request to strike the Order on reconsideration, Wells

Fargo respectfully requests that the Court limit the scope of discovery to require production of

any exceptions to the investor restrictions made during the pendency of Mr. Haque's bankruptcy,

*i.e.*, July 2018 to-date, pursuant to a protective order.  In addition, should the Court either permit

this limitation or deny Wells Fargo's motion in its entirety, Wells Fargo respectfully requests an

extension of its deadline to produce responsive documents from July 1, 2019, until forty-five days

after the Court enters an Order on this motion.[10]

---

[10] Mr. Haque recently filed a letter on June 11, 2019, requesting an adjournment of the Chapter 13 confirmation hearing from June 12, 2019 until October 23, 2019. [Doc. No. 64.] Therefore, there remains sufficient time to provide any information ultimately required by the Court well in advance of the confirmation hearing.

## V.    CONCLUSION

For the forgoing reasons, Wells Fargo respectfully requests that this application be granted in its entirety as set forth herein and it be awarded such other and further relief which the Court deems just and proper.

Dated:        New York, New York
              June 27, 2019

                        REED SMITH LLP

                        By:_*John L. Scott*_____
                            John L. Scott (JLScott@reedsmith.com)
                            599 Lexington Avenue
                            New York, NY 10022
                            Telephone: (212) 521-5400
                            Fax: (212) 521-5450

                            *Co-Counsel for Creditor HSBC Bank USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-AR10*

- 13 -